You may be seated. The clerk will call the next case. Case number 315-0703. In re the Matter of the Estate of Ann Sperry, Jack Sperry Cohen, fed Barney Olsen II, versus Matthew Spencer, administrator of the Estate of Ann Sperry, happily by John Robertson. Mr. Olsen, you may proceed. Good afternoon. There are two issues on this appeal. One, did the lower court err in finding the gift of a cemetery plot by Jack to the Estate of Ann? And two, did the lower court err by entering an order which allowed the administrator of the Estate to choose, place, and inscribe a headstone on the plot purchased and owned by Jack? In both instances, error was committed by the trial court. The existence of a gift cannot be sustained in this instance without clear and convincing... Can I ask you to pause just for a moment? I know in the trial court there was a request or an agreed protocol to have the children of the deceased outside of the courtroom. Are they in the courtroom? The children of Mr. Sperry are with him now and they are in the courtroom today. Yes, ma'am. Has this been addressed by the attorneys? Is there a need to have minors present in the courtroom to listen to these delicate issues? I think with respect to the law, it probably will be beyond them. But if the justices wish the Sperry children to be removed... I'm not going to compel it, but I would simply ask. Some of the questions could be harsh. So I'm going to defer to your wisdom as the attorney for Mr. Sperry and the attorneys for Mrs. Sperry whether the children should remain in the courtroom or not. Do you have any problems with that, Jack? No. Go ahead. I feel it's more appropriate that they be not in the courtroom. We have a split. I don't see any problem with them remaining. If it gets to the stage where for some reason either of you or any of you decide that it's inappropriate, please tell me and then I'll ask. My questions could be blunt and my questions may seem harsh. Sometimes I have to ask tough questions in order to resolve issues in my mind. And I simply want you to know that some of my questions may haunt young children. Justice Wright, if you would prefer that I... No, I'm not directing you to. I'm not directing you to at all. I just want everybody to know that the fact that there are minors in the courtroom is not going to cause me to tailor my questions. Understood. Okay. Did that take up part of my time? I don't think it should. I don't think it should. Thank you. Thank you. What I was getting to was the existence of a gift cannot be sustained without clearing convincing evidence. And I think that... It was not. I think the trial court record shows that there was no intent to make a gift. There were none of the elements of a donative gift. And it was not raised that it was a gift by the estate of Ann. But it's your position now that he didn't do this for his ex-wife. He bought the plot. He bought two plots with the idea as... I just want to know what his position is now. It's not a gift to the estate? It was not a gift to the estate. And it's not now? It is not now. It never was. Should the client contend that he owns an interest in real property? There's no question on this. A lot of the cases that I cited to you, that when you purchase a cemetery plot, concurrent with that goes the right to erect a headstone and to inscribe that headstone. I think that that is one of the situations that... Do you think that your client owns an interest in real property? Does he own real estate? Or what is it that he purchased when he bought two burial plots? He purchased two burial plots and with that he acquires an interest in those burial plots. And that is an interest in that realty. You're buying the easement. You're buying the right to use... That's one way to look at it, yes. But it's subject to the statute. It's subject to the terms that the cemetery prescribes as to what they can do with it. People who have a loved one buried in a cemetery don't get to decide what exactly happens. There are rules. Some cemeteries say you can have a headstone. Some say they have to be flat. Oh, I understand. Each of the cemeteries is different, yes. So the power to direct that is not in the person necessarily that made the purchase of the easement for the burial plot. I disagree with the phrase of easement and I think that some of the cases that I've cited to you indicate that he acquired the right to direct the placement and the inscription of the headstone. And along with that goes the fact that there was never the gift that Justice Wright acquired. So does he continue to consent to allow his ex-wife to lay in rest? Absolutely, absolutely. And what if his mind changes next week? Who controls whether she stays or goes? I think the decision that you make in this particular case... I just want you to answer my question. Who controls, he consented to have her buried there. That is correct. Do you believe he has the ability to change his mind? I think... To require that she be exhumed? No. Not after what we've gone through to get to this stage, I don't believe that that would occur. No, I'm asking, do you believe he has the right to change his mind? No. I think Ann stays... How long has she laid there without a headstone? No, you should know that. I'm sorry, I don't... Alright. Please continue. In this case, the administrator of the estate has the burden of showing that a gift was in fact intended. There is no evidence of that in the trial court record in place. The lower court, Judge Morrison, merely concluded that a gift had in fact been made. It was not an issue that was before that court. The finding of a gift was despite that there was absolutely no evidence or pleading in the record. Manheimer, Schwitz, Slocum, Grummer, and all of the cases that I've cited on 8 and 9 of my appellate's brief indicate that that is what occurred here. The third district in Warren's estate indicates that a court will not aid or perfect a defective situation. And that perhaps is what Judge Morrison did here. But that ruling is nothing more than surplusage and therefore it's a nullity. The cases that you cite are almost exclusively out-of-state cases. And most of them deal with family burial plots and people that have an interest in a joint family tombstone and names that had already been placed should they be removed. But this situation seems to be a little different than that. And if you have stated that Mr. Sperry doesn't have the right to require removal, I guess I'm trying to determine exactly what ownership right he would have. You're saying that now that there are remains there? Yes, ma'am. And he doesn't have the right to say they are a trespass and that he can't have those remains removed. I think that would demonstrate that perhaps he doesn't continue to have control over the decisions made regarding that plot or the ones that are there. I disagree a little bit with the categorization that most of my cases are out-of-state cases. I think the cases that I've cited indicate that the acquisition of that plot by Mr. Sperry and the use of it for the interment of Anne gives him, you know, he acquired a right as Justice Wright was trying to get at earlier. But where there isn't any donative intent to give this to the estate of Anne, Jack purchased the plots, two of them, adjoicent. He's going in one sometime and she was going in the other one. So I don't see where that there's any type of issue that you're raising or that you might raise that he can somehow change his mind tomorrow and say, no, she has to go elsewhere. What a magnanimous thing for him to do when his ex-wife unexpectedly was killed. What a good father stepped forward and said, you know what, I'll pay for this plot and I'm going to put her next to me so that our children can visit both of us at the same time. I agree. Very, very wise parental act. I agree. Because I'm sure there were children hurting at the time of the accident. I'm sure there still might be. But then in hindsight, there seems to be some disagreement as to how to honor the mother of three children by placing a stone on her grave site. Since they cannot come to an agreement as to what the language in the stone might say, why not simply have the estate pay your client $800 to resolve the issue, which is the cost of the barrier plot? In fact, I would even go so far as to suggest, why not have the estate offset some of the arrearage on the past due child support? I didn't realize we were here for a settlement type negotiation. No, we're not. Okay. We're not. I think that all of those possibilities were suggested, or at least approached, by the estate and myself on behalf of Mr. Sperry and with his knowledge when Judge Morrison said, why don't you see if something can be resolved here? And he gave us some time. So then you can ignore my question. We're here today because we have to decide simply whether the father of these children intended to gift that plot to the estate of the deceased mother. And the answer is he never intended to gift that plot. He controls it. He determines how long she lays there and how her body is marked. I believe that is correct with a little bit of an extra caveat, Justice, and that is that the idea of a gift was never brought by the estate. I understand that. And Judge Morrison ruled that he found that there was a gift. That's what raised the gift thing. That's why I addressed the issue of gifts so much in my brief. The estate presented a defense, so to speak, on equitable estoppel. I mean, would you want to address that? I was going to address the idea of equitable estoppel in my reply to their brief, Justice, if I can do that. Certainly. Okay. Your argument. Thank you. As I've said, the purchase, we feel, includes the right to erect the headstone, place it, et cetera. Or not to erect the headstone. Or not. Obviously, we suggested a joint headstone, as was included in our appendix. That was rejected by the estate. I think that the Texas case – But what has prevented your client from buying a headstone and putting it there? I think his – He hasn't done that either. No, he has not. So it appears to me to be his preference to have her grave not marked at all. I think that is absolutely wrong, Justice. I think what has occurred is because this case went up on appeal, I think Mr. Sperry deferred to having this decided here that there wasn't – When did the mandate issue in the last appeal? Pardon me? When did the mandate issue in the last appeal with regard to the child's appeal? Never mind. I will throw my question. Okay. He has elected not to place a marker. Not until this court rules on this appeal. That's correct. But I think he still intends to do the joint headstone that I mentioned earlier. My mother always used to say to me that actions speak much louder than words. My mom must have known yours. What I was was the Texas case actually covers the factual situation of Matthew as the Administrator of the State. There's no will. There's no specific directions by hand. And in my viewpoint, there's no specific Illinois law that directly covers the dispute that exists between Jack and the Administrator. The Kentucky case that I cited is actually the inverse of our situation, but if you've read that case, the reasoning there actually applies to a ban on the Administrator placing a headstone on a plot that Jack owns. Now, I realize that's a Kentucky case and you are not bound by it. But I think what has been shown by our brief, and I'm referring to the sections of our brief, Part 2A shows that Jack has the sole power and right to place and to erect that headstone. Part 2B shows that Jack's wishes should be taken into account. And Part 2C indicates that the rights of the owner of the plot to choose a grave marker prevail over other parties who might, and that's the operative word, might have priority rights on the selection of a marker. We do not. Thank you. I think that that concludes my initial remarks. I'll address, hopefully address Justice Holder's comments when I address whatever Mr. Morrison has to argue. Thank you very much. Thank you. Mr. Robertson? I have good news and bad news. The good news is I'm not going to read my brief to you. The bad news is I do have some things to say and they may be rather harsh. The reason there's all this fuss over a headstone is because there was obviously history between these parties. There was a divorce, there was an average in child support, there are injured felines on both sides, and there was a third child of Ann's burial. It is his third child. It is. She's still alive. Thank you. So, Mr. Olson's argument about whether or not there was evidence of a gift, or for that matter whether or not there's evidence to raise a stopper, is based on the simple proposition that everything Mr. Sperry says is credible and true. And in a case, there's more than the testimony of one party. There is circumstantial evidence. There is the testimony of the opposing party. There are the overall circumstances and procedural history. We've outlined all this in the brief and I'm not going to go into it in great detail, except to say this. I believe that the clear and convincing evidence in this case is based on whether you believe Jack Sperry or not. And here's my analysis. If you believe Jack Sperry, if his testimony is to be believed, then at the time his wife died, his ex-wife, he did not intend to make a gift. He intended to retain ownership of that separate plot and exercise control over it. And he told no one. There's a reference that he might have told one collateral relative. He did not tell Ann Sperry's father.  His intent was not expressed. And so in reliance on that, Ann's family accepted his gracious gift of the plot. Accepted it in this sense, whether it's a gift or not. If it's not a gift, they consented to have her buried there. And that is substantial reliance. And that substantial reliance then gives rise to estoppel. Because if you read the section of our brief on estoppel, it must be proven by clear and convincing evidence. And if Jack Sperry is to be believed in his testimony, there is clear and convincing evidence of estoppel. And by the way, estoppel is what Mrs. Palmer, the probate attorney, initially raised. So we have no problem with the pleadings. We have Mr. Sperry's credibility. And we have him not stating to the family what his true intent was when his ex-wife was laid to rest. On the other hand, if you don't believe Mr. Sperry's testimony, in other words, if the trial judge, in the context of the circumstantial evidence and the overall posture of the case, felt that the clear and convincing evidence was that this was a gift at the time, then the gift was completed. It's unconditional. Mr. Sperry has no right to get his name on his ex-wife's tombstone, which, after all, is what this is all about. What this is really about is Mr. Sperry's desire to have his name appear next to his ex-wife as if the divorce had never happened. That may have been his desire. But it clearly wasn't the desire of her administrator, and it clearly was not the desire of her oldest child. That's the problem. So, in terms of clear and convincing evidence, if you believe Mr. Sperry about his lack of donative intent, we have clear and convincing evidence of estoppel. And if you don't believe Mr. Sperry about his donative intent, you have clear and convincing evidence of the gift. In any event, it is the trial court who was in the best position to assess all of these issues, the credibility of the parties. He observed the testimony, and no one at the trial court suggested, Mr. Olson, at no point in the trial court said, oh, by the way, Judge, I would like a finding of clear and convincing on this. And yet, the evidence supports that. And if you read the case law, contrary to what Mr. Olson cites in 1909 or whatever it is, the appellate case, in his reply brief, once the court has made that decision, then you must determine whether that decision is against the manifest weight of the evidence. So, I would submit to the appellate court this. If you believe Mr. Sperry, he loses. If you don't believe Mr. Sperry, he loses. Thank you. I have a question. Yes, ma'am. Following up on my mother's advice, actions always speak louder than words. On the issue of donative intent, did Mr. Sperry submit a claim to the estate for reimbursement of the cost? No, ma'am, he did not. So, doesn't the fact that he didn't submit a claim in the probate case support the trial court's view that this was a gift? Yes, it does, and that entire record was before the trial court. Thank you. Thank you. Thank you. Mr. Olson. I'll address some of Mr. Robertson's comments first. Mr. Robertson brings up a lot of things that just didn't occur in the court below and would seem to have you believe that all of those things did in fact occur. You have the record on appeal, and you have the transcripts of what Judge Morrison did here. At no point when Judge Morrison ruled that a gift had been made was he basing it on anything. The only thing he said after giving us the time to see if we could resolve it, and we came back a totally different day, was I reviewed my notes, and I find that there was a gift. He doesn't say why. He doesn't say where. He doesn't say anything. I think the evidence really is that Jack bought the plot because the estate had no money. There was no money to buy the plots. There was no money to buy the headstone. A lot of what Mr. Robertson is suggesting is merely rhetoric. I think the fact that the heirs, the administrator, consented to her placement there indicates that they knew that Jack had that plot. That was where Ann was going to be. I don't know what Mr. Robertson's argument with respect to the oldest child of Ann has to do with, quite frankly, anything. That was not a child of Ann and Jack's, but Ann and somebody else. I think that's precisely the argument, is that she made an attempt to go and discuss what would be in that plot, and she is somebody who, under the statute, may qualify as... It says if there is no... If a decision hasn't been made prior to your death about what you want on your tombstone, then heirs decide that she would be somebody that would be a decision-maker. I agree. That may be why it was raised. Certainly not... His idea was to have... They were parents of these kids. She wouldn't be listed under that. She's on the stone. She's beyond another end of it. I understand that idea. Mother of Ann, and then Jack had another child, father of, and then parents of the two young children that are here in the courtroom today that were the product of Ann and Jack. I think what... Where do Ann's wishes play into the equitable considerations that were requested for the trial court to balance? Do you think Ann would want these three sisters to be prevented from spotting her grave for so long? I can't speculate on that, ma'am. So Mr. Sperry is the only person, the only parent that survives and he gets to decide? I think that... Your argument is because he paid for the lot and he is no longer a relative of Ann, he's no longer an heir of Ann, he controls what the headstone says. I'm guessing if we let these three beautiful girls leave the courtroom today and come up with a solution, they'd come up with a better solution than any of us would. So where do Ann's desires come in? Ann never expressed any wishes. She had no will, she had no indication of an intent. She didn't know she was going to die in this accident. She was a younger lady. Then can you address my question of if he did not intend it to be a gift, why didn't your client submit a bill to the estate for the cost of the plot? He bought the plot with the idea that there's two plots, one for him and one for Ann. But this is not a conditional gift. This is a gift with no strings attached. It appears. I don't think it's a gift, Justice Wright. I think that Jack acquired some ownership in that and the ability to place and erect the stone and I think my reply brief addresses those issues about the estoppel. If the administrator of the estate then decided to disinter Ann, to place her in a location with a headstone that honors the three gifts she brought into this world, three girls, would your client prohibit the disinterment of Ann from the plot? That's speculation in the future. I can't tell you the answer to your question. I think you just can't. No, I really haven't, ma'am. And I'm not trying to dance with you, pardon the vernacular, but I think that the speculation is just that. And Jack's intent... You've answered my question. Okay, Jack's intent is to put that stone that we showed in our appendix there. Counsel has one minute. Thank you. Why isn't he taking into account her oldest daughter's wishes? I think he told the administrator to leave and never come back. That was before the content of the stone was known. That's perhaps where you're not getting the chronological sequence of events. I think that Mr. Robertson also suggesting that manifest weight of the evidence comes into play. All the cases that I cited in my reply brief to his suggestion of that is wrong. It wasn't a gift. There's no intent to pass title. That's your own third district Hudson estate case. And that just doesn't exist. Mr. Spencer never raised that issue below. Court didn't put a burden on Mr. Spencer. Court failed to apply the proper burden of proof. And contrary to what Mr. Robertson said in his brief, it does not show that Mr. Sperry intended that there was no gift. Mr. Robertson didn't say anything to that effect. No gift was intended. And that brings up that there's no merit to Mr. Spencer's argument through Mr. Robertson that he weighed the defense of statute of clause. That never came up at the time. Mr. Sperry never suggested that somehow Mr. Spencer never suggested that Mr. Sperry had in fact made a gift of this to the estate. Anybody has any additional questions? Thank you very much for your attention today. Thank you, Mr. Olson, Mr. Robertson. This matter will be taken under advisement and a written decision will be issued as soon as possible.